JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Hermann Muennichow,<br><br>　　　　　　　Debtor.<br>――――――――――――――――<br>Helayne Muennichow,<br><br>　　　　　　　Appellant<br><br>　　v.<br><br>David Seror,<br><br>　　　　　　　Appellee. | Case No. 2:21-cv-07737-SPG<br><br>**ORDER AFFIRMING BANKRUPTCY COURT'S ORDER** |

　　　This matter is on appeal from the United States Bankruptcy Courts for the Central District of California. Appellant Helayne Muennichow appeals the Bankruptcy Court's order granting the chapter 7 trustee's application to employ a real estate broker to sell her home as the debtor's community property. The Court has read and considered the record and parties' briefs filed in connection with this appeal, as well as the parties' oral arguments during the hearing. For the reasons discussed below, the Court **AFFIRMS** the Bankruptcy Court's order.

## I. BACKGROUND

### A. Factual Background

On November 27, 1983, Hermann Muennichow ("Debtor") and Appellant Helayne Muennichow ("Appellant") married. (ECF No. 16-2, Excerpt of Record ("ER") 368). On April 29, 2010, Debtor and Appellant (together, the "Muennichows") acquired real property located at 38685 Calle de Lobo, Murrieta, California 92562 (the "Property"). (ER 359). Title to the Property was held in both Debtor and Appellant's names as community property while the Muennichows were married. (ER 369). In November 2013, Appellant filed for divorce. (ER 194). In order to refinance the Property during their divorce proceedings, the Muennichows agreed that Debtor would transfer his interest in the Property to Appellant by way of a quitclaim deed in exchange for Appellant transferring her ownership interest in Debtor's accounting practice. (ER 195, 402–03, 584–85, 654–55). On September 29, 2016, the Muennichows signed a stipulation and proposed order, which stated, "[t]he [Muennichows] own a residence located at 38685 Calle De Lobo, Murietta, CA 92562. It is undisputed that this residence is community property." (ER 197–98 (the "Stipulation")). The Stipulation provided that each of the Muennichows would retain their respective community property interests in the Property and Debtor's accounting practice notwithstanding the execution of quitclaim deeds and that the purpose of the transfer was to allow Appellant to refinance the Property. (*Id.*). The Stipulation was filed with the Los Angeles County Superior Court presiding over the Muennichows divorce proceedings for approval. (*Id.*). On November 3, 2016, pursuant to the Stipulation, Debtor executed the quitclaim deed facially transferring his interest in the Property to Appellant. (ER 200–203 (the "Quitclaim Deed")).

On March 16, 2017, Debtor filed a voluntary chapter 7 petition in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"). (ER 2–11). Appellee David Seror was appointed the chapter 7 trustee (the "Trustee"). (ER 69, 71). In Debtor's chapter 7 petition, he disclosed the Quitclaim Deed in his initial

bankruptcy schedules as a prepetition transfer of property and did not list the Property as a real property asset in the chapter 7 schedules. (ER 44, 53, 65).

### B. The Adversary Proceeding

On July 28, 2017, the Trustee filed an adversary complaint in the Bankruptcy Court against the Muennichows to recover the Property, asserting claims for actual and constructive fraudulent transfer (the "Adversary Proceeding"). (ER 68–70). The Trustee's adversary complaint alleged, among other things, that the Muennichows acquired the Property in April 2010, title was held in both of their names, Debtor transferred his interest to Appellant via the Quitclaim Deed in November 2016, and Appellant did not provide valid consideration for the transfer. (ER 68–70, 72). The Trustee sought to recover the Property for the benefit of the estate on the basis that Debtor fraudulently transferred the Property to Appellant to place it beyond the reach of his creditors. (ER 68–70). The matter was tried on various days from August to September 6, 2019.

At the conclusion of the trial on September 6, 2019, the Bankruptcy Court issued its oral ruling. (ER 368). Concerning the purported transfer of the Property, the Bankruptcy Court held based on the testimony and documents that had been admitted into evidence during the trial that, "[a]lthough a few badges of fraud are present," specific evidence negated an inference of fraud. (ER 374). The Bankruptcy Court found that long after Debtor transferred the Property, Appellant continued to characterize the Property as community property in documents filed with the family court. (ER 379–80). In particular, the Bankruptcy Court pointed to the Stipulation, which stated that Debtor would transfer the Property to Appellant, that "the Property would retain its community property characteristic," and that the purpose of the transfer was to allow Appellant to refinance the Property. (ER 370). The Bankruptcy Court found that, although the Muennichows' Stipulation was never approved by the family court handling the dissolution of Debtor and Appellant's marriage due to Debtor's subsequent death, this fact did not preclude the parties' Stipulation from being a valid contract supported by valid consideration. (ER 380). The Bankruptcy Court also pointed to the fact that Appellant had filed in the family court

a schedule of assets and debts that indicated the Property was community property. (ER 371). Also, the Bankruptcy Court found credible and corroborated by the documentary evidence Appellant's testimony during the trial that the purpose of the Quitclaim Deed was to enable the Property to be refinanced to help pay tax liens attached to the Property and that the Debtor and Appellant "intended to retain the community property characterization of the [P]roperty." (ER 370, 374). Based on the foregoing, the Bankruptcy Court concluded that the purpose of executing the quitclaim deed was "not to shield the [P]roperty from the Debtor's creditors, most of whom could simply collect from [Appellant]." (ER 370, 374). The Bankruptcy Court then distinguished cases cited by the Trustee in which spousal transfers had placed marital assets out of reach of creditors. (ER 376–77). In so doing, the court stated, "[t]he Court just doesn't see these as comparable to the situation here where . . . there was not really an effective transfer to the extent there even was a transfer, and creditors . . . were as capable of reaching the assets once they'd been transferred just as they were otherwise, and a lot of them were allegedly creditors of [Appellant] too because she was a Defendant in litigation that they brought."[1] (ER 377). The Bankruptcy Court therefore held that the Debtor did not transfer the Property with intent to hinder, delay, or defraud his creditors. (ER 373–74). Thus, on September 24, 2019, the Bankruptcy Court entered judgment in favor of Appellant. (ER 663–64).[2]

### C. The Trustee's Application to Employ a Real Estate Broker

On June 10, 2021, the Trustee filed an application to employ Coldwell Banker Residential Brokerage and Help-U-Sell Inland Valley as real estate brokers to market the Property pursuant to 11 U.S.C. § 327. (ER 250–53 (the "Application")). In support of the Application, the Trustee asserted, "[b]ased upon the Court's judgment entered September 24, 2019 in the Adversary Proceeding . . . and the findings made by the Court, the Property is held as community property and is thus property of this Estate pursuant to Bankruptcy

---

[1] The Bankruptcy Court found the Property at the time was almost entirely encumbered, and Appellant "was liable to the same creditors referenced by the Trustee." (ER 374).
[2] Debtor died on November 11, 2017. (ER 91-93).

1 | Code § 541(a)(2)." (ER 251). The Trustee noted the Property is likely worth $1,995,000. (*Id.*).

Appellant submitted a declaration in opposition to the Application. (ER 298–320). In the declaration, Appellant's counsel argued that the Stipulation between the Debtor and Appellant in connection with the sale of the Property stated that the Debtor's "community property right in the assets shall be preserved, but there was never a determination [in the dissolution action] that he had any community property rights" because the Debtor died while it was pending and the action was dismissed as moot. (ER 299 (internal quotation marks omitted)). Appellant's counsel further argued that the issue of whether the Debtor retained any community property rights in the Property also was not presented as an issue to be determined during trial in the Adversary Proceeding. (*Id.*) Although Appellant's counsel acknowledged that the Bankruptcy Court had made what counsel described as "comments" about the Property being community property in the court's findings, he argued such comments "would not be the subject of collateral estoppel" because the issue was not actually litigated and the determination of the issue in the Adversary Proceeding was not a critical and necessary part of the judgment in that proceeding. (*Id.*). Notwithstanding, Appellant's counsel argued that res judicata precludes the Trustee's attempt to exercise dominion over the Property because the Trustee, when asserting claims against Appellant for fraudulent conveyance in the Adversary Proceeding, failed to also advance a claim for the Property as being property of the estate based on Bankruptcy Code § 541(a)(2). (ER 300–01).

On July 15, 2021, the Bankruptcy Court issued a tentative ruling on the Application. (ER 439–43). In its tentative decision, the court found that res judicata does not bar the Trustee from asserting that the Property is property of the estate. The Bankruptcy Court held:

> In the Adversary Proceeding, the Court assessed whether the execution of the stipulation and quitclaim deed qualified as a fraudulent transfer. The Court's determination that a fraudulent transfer did not occur will not be 'destroyed or impaired' by the current dispute over whether, as of the petition date, the

> Property was community property. Nor would an analysis of the Property's characterization involve the same rights or the same transactional nucleus of facts presented in the Adversary Proceeding. In the Adversary Proceeding, the Trustee attempted to recover alleged transfers that, in the Trustee's view, were used to shield property of the estate from creditors. Here, the Trustee is merely characterizing the Property as property of the estate, to market and sell the Property for the benefit of the estate. Finally, although the parties presented potentially overlapping evidence during trial, the parties were not called upon to prove the characterization of the Property as of the petition date, and have not had an opportunity to do so.
>
> In fact, the Court is not currently presented with a 'claim' or 'cause of action' at all; the Trustee is not stating an affirmative claim for relief against Ms. Muennichow. Rather, the parties dispute the characterization of the Property. A holding that res judicata prevents the Court from determining the nature of the Property would lead to an absurd result; because the Court never adjudicated the nature of the Property, preventing litigation of the issue would leave the parties in limbo, with one party arguing that the Property is property of the estate and the other asserting that it is not.

(ER 440–42). On September 9, 2021, the Bankruptcy Court issued a final order granting the Trustee's Application and incorporating the above analysis from its tentative decision. (ER 509–17). In reaching its decision, the Bankruptcy Court found the Property is community property and therefore is included in Debtor's estate and available to be sold for the benefit of its creditors. (ER 514–18). Specifically, the Bankruptcy Court held:

> Ms. Muennichow's own evidence establishes that the Property was community property prior to execution of the Quitclaim Deed. First, the Quitclaim Deed itself provided that, prior to execution of the Quitclaim Deed, the Property was held by Debtor and Ms. Muennichow "as Community Property." In addition, through the Stipulation, Debtor and Ms. Muennichow agreed that "it is undisputed that [the Property] is community property."
>
> . . . Ms. Muennichow did not rebut the presumption, under California Family Code § 760 and [*In re Brace*, 9 Cal.5th 903, 911 (2020)], that the Property was purchased as community property.

> . . . [T]his Court need not decide whether the Quitclaim Deed, standing alone, would qualify as a valid transmutation under California law. The record demonstrates that Debtor and Ms. Muennichow executed the Quitclaim Deed in accordance with and as part of the Stipulation. Through the Stipulation, Debtor and Ms. Muennichow expressly stated that "[n]otwithstanding the language in the Quitclaim Deed, [Debtor's] community property rights in [the Property] shall be preserved." The Court cannot ignore the context provided by the Stipulation, without which the parties would not have executed the Quitclaim Deed at all. . . . In light of the clear and unambiguous language in the Stipulation, which was signed and executed concurrently with the Quitclaim Deed, the Quitclaim Deed did not serve to transmute the Property from community property to separate property. . . . [T]he evidence before the Court establishes that the Property is community property.

(ER 514–18 (internal citations omitted)). On September 14, 2021, the Bankruptcy Court entered an order approving the Trustee's Application. (ER 534).

### D. Procedural History

On September 29, 2021, Appellant filed her notice of appeal. (ECF No. 1). On February 28, 2022, Appellant filed her opening brief appealing the Bankruptcy Court's September 9, 2021, decision declining to apply res judicata to preclude the Trustee from treating the Property as community property. (ECF No. 16 ("Mot.")). The Trustee answered on April 13, 2022.[3] (ECF No. 18 ("Opp.")). And Appellant replied on April 27, 2022. (ECF No. 19 ("Reply")). The Court heard oral argument on March 15, 2023.

---

[3] In its answering brief, the Trustee asserts the Bankruptcy Court "would have been within its discretion to apply judicial estoppel" against Appellant. (ECF No. 18 at 23–31). However, Under Rule 8002(a), a party wishing to cross-appeal must file its notice of appeal within 14 days of the filing date of the first notice of appeal. "An appellee who fails to file a cross-appeal cannot attack a judgment with a view towards enlarging his own rights." *Spurlock v. FBI*, 69 F.3d 1010, 1018 (9th Cir. 1995) (citations omitted). *See also Greenlaw v. United States*, 554 U.S. 237, 244–45 (2008) ("Under [the] unwritten but longstanding [cross-appeal] rule, an appellate court may not alter a judgment to benefit a non-appealing party. This Court, from its earliest years, has recognized that it takes a cross-appeal to justify a remedy in favor of an appellee."). Accordingly, because the Trustee has not filed a cross-appeal, this Court will not consider the issue of whether the Bankruptcy Court properly declined to apply judicial estoppel.

## II.   STANDARD OF REVIEW

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a).  Federal Rule of Bankruptcy Procedure 8013 provides that "[o]n an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings."  Fed. R. Bankr. P. 8013.  In an appeal from an order of a bankruptcy court, conclusions of law are reviewed de novo and findings of fact are reviewed for clear error.  *Blausey v. United States Tr.*, 552 F.3d 1124, 1132 (9th Cir. 2009).  The clear error standard is "significantly deferential, requiring a definite and firm conviction that a mistake has been committed before reversal is warranted."  *United States v. Bourseau*, 531 F.3d 1159, 1164 (9th Cir. 2008) (quotations omitted).  The Court reviews the availability and application of claim preclusion, or res judicata, de novo.  *See Grondal v. United States*, 21 F.4th 1140 (9th Cir. 2021) ("[D]istrict court judgments as to issue and claim preclusion are reviewed de novo").[4]  A district court may affirm a bankruptcy court's order "on any ground supported by the record, even if it differs from the ground relied upon by the bankruptcy court."  *Thrifty Oil Co. v. Bank of Am., Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1046 (9th Cir. 2003).

## III.   DISCUSSION

"Res judicata bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties, where the previous action was resolved on the merits."  *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 322 F.3d 1064, 1078 (9th Cir. 2003).  The doctrine of res judicata "applies to matters decided in bankruptcy."  *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 529 (9th

---

[4] The Trustee argues the Court should review the bankruptcy court's application of claim preclusion for abuse of discretion.  However, the Trustee is mistaken.  The Ninth Circuit has held that the abuse of discretion standard applies to the application of *issue* preclusion, not *claim* preclusion.  *See Media Rights Techs., Inc. v. Microsoft Corp.,* 922 F.3d 1014 (9th Cir. 2019) (holding that de novo review applies to a court's application of claim preclusion).

Cir. 1998). Res judicata, otherwise known as claim preclusion, serves two important objectives: to limit "the number of times a defendant can be vexed by the same claim or issue" and to "promote efficiency in the judicial system by putting an end to litigation." *Gilbert v. Ben–Asher*, 900 F.2d 1407, 1410 (9th Cir. 1990). Therefore, "[i]t is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought." *Tahoe-Sierra*, 322 F.3d at 1078. The doctrine applies whenever there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001).

To establish identity of claims, courts consider: "(1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions." *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005). The Ninth Circuit has "long recognized the flexibility inherent in the res judicata determination with respect to identity of claims." *United States v. Liquidators of Eur. Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011) (citing *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1202 n.7 (9th Cir. 1982)). Although it is said that the first factor—the same transactional nucleus of facts—is the "most important," *id.*, the court's "[w]eighing of the four factors is not a mathematical exercise, and no single factor is automatically decisive." *In re Int'l Nutronics, Inc.*, 28 F.3d 965, 971 (9th Cir. 1994).

### A. Whether the Two Suits Arise Out of the Same Transactional Nucleus of Facts

Courts use a "transaction test" to determine whether the two suits share a common nucleus of operative fact. *Id.* at 987. The "transaction test" asks whether the two suits "are related to the same set of facts and whether they could conveniently be tried together." *Id.* (quoting *W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992)). "[T]he inquiry into the

1  'same transactional nucleus of facts' is essentially the same as whether the claim could
2  have been brought in the first action." *Turtle Island Restoration Network v. U.S. Dep't of*
3  *State*, 673 F.3d 914, 918 (9th Cir. 2012) (quoting *Liquidators*, 630 F.3d at 1151).

4      Here, the Court finds that the Trustee's Application arises out of "the same
5  transactional nucleus of facts" as those in the Adversary Proceeding.  Beginning with the
6  latter, the Adversary Proceeding arose out of the following facts: the Muennichows
7  acquired the Property in April 2010 with title held in both their names as community
8  property, Debtor executed the Quitclaim Deed in November 2016, the Muennichows
9  concurrently entered into the Stipulation, and Debtor filed for chapter 7 bankruptcy while
10 listing the Property as a prepetition transfer falling outside his estate.  (ER 68–72, 369).
11 Based on these facts, the Trustee argued that Debtor fraudulently transferred his interest in
12 the Property to place it beyond reach of his creditors.  (ER 69–70).  Thus, the gravamen of
13 the Adversary Proceeding was to avoid the Quitclaim Deed to bring the Property back into
14 Debtor's estate for the benefit of its creditors.  A key consideration in the proceeding was
15 that Debtor and Appellant "intended to retain the community property characterization of
16 the [P]roperty."  (ER 373).  That is because Appellant's main argument at trial was that she
17 and Debtor took title to the Property "as community property" and that they never intended
18 the Quitclaim Deed to alter the Property's community property characterization.  (ER 583–
19 86).  Appellant submitted written testimony that Debtor transferring the Property to her
20 and putting the home in her name "had nothing to do with external financial issues other
21 than potentially qualifying for a new loan to pay the IRS.  It was not done to avoid payment
22 of any obligations.  It was not done to evade or hide money from any creditors."  (ER 586).
23 The Court also observed that, as of October 31, 2017, well after Debtor issued the
24 Quitclaim Deed, Appellant herself "was characterizing the [P]roperty as community
25 property in documents filed with the Family Court."  (ER 379).

26     Though despite the overwhelming evidence that the Property was, and remains,
27 community property, according to the Bankruptcy Court, it was never determined whether
28 the Property was in fact community property and thereby part of Debtor's estate under

Bankruptcy Code section 541(a)(2) because the Trustee did not seek that relief from the court. *See, e.g.*, (ER 441 (Bankruptcy Court noting that it "has not previously held that the Property is community property, or that the Property is property of the estate")). This Court gives "deference to the [Bankruptcy C]ourt's interpretation of its own order, based on the court's extensive oversight of the decree from the commencement of the litigation to the current appeal." *Hallett v. Morgan*, 296 F.3d 732, 739–40 (9th Cir. 2002); *In re Wallace*, 490 B.R. 898 (9th Cir. BAP 2013) ("We accord substantial deference to the bankruptcy court's interpretation of its own orders and will not overturn that interpretation unless we are convinced it amounts to an abuse of discretion."). Accordingly, the Court accepts that the characterization of the Property had not been determined prior to the Bankruptcy Court's order on September 9, 2021.

Two years after the Adversary Proceeding, the Trustee reviewed the status of the Property and determined there was sufficient equity to liquidate it for the benefit of the estate.[5] (ER 251). The Trustee thereby filed the Application for permission to employ a broker to sell the Property on the basis that it is community property and therefore property of the estate pursuant to 11 U.S.C. § 541(a)(2).[6] (*Id.*). To employ a broker on behalf of Debtor's estate, the Trustee requires "the court's approval" under 11 U.S.C. § 327(a). To approve the Application, the Bankruptcy Court relied on the same set of facts that gave rise to the Adversary Proceeding. For example, in the Bankruptcy Court's order dated September 9, 2021, the court considered the Muennichows' acquisition of the Property as community property, Debtor's Quitclaim Deed, and the Stipulation. The Bankruptcy Court also relied on Appellant's prior testimony from the Adversary Proceeding regarding the characterization of the Property. (ER 514–518). Thus, the Application arose from the

---

[5] "A chapter 7 trustee's charge is to maximize recovery for creditors by maximizing the bankruptcy estate's assets." *In re Herter*, 456 B.R. 455, 469 (Bankr. D. Idaho 2011) (citing *United States v. Sims (In re Feiler)*, 218 F.3d 948, 952 (9th Cir. 2000)).

[6] Bankruptcy Code section 541(a)(2) provides that the bankruptcy estate is comprised of "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case . . . ."

same facts that gave rise to the Adversary Proceeding: the Trustee attempting to recover the Property for the benefit of Debtor's estate based on the Muennichows' jointly held Property, the Quitclaim Deed, and the Stipulation. Moreover, the two actions could have conveniently been tried together. This is evidenced by the fact that Trustees have frequently sought to avoid a fraudulent transfer and sought declaratory relief that a property is community property in the same action to recover a property for the benefit of the estate. For example, in *In re Brace*, 908 F.3d 531, 535 (9th Cir. 2018), the trustee filed an adversary proceeding seeking, among other things, "a declaration that the [p]roperties were property of the bankruptcy estate" and avoidance and recovery of the debtor's fraudulent transfers. *See also In re Yan Sui*, No. 8:11-BK-20448-CB, 2013 WL 5325834, at *1 (C.D. Cal. Sept. 20, 2013) (the trustee filed a complaint for avoidance and recovery of fraudulently transferred property and declaratory relief regarding the debtor's community property interest in the property). Accordingly, this Court finds that the two suits arise out of the same transactional nucleus of facts because they are related to the same set of facts and could conveniently be tried together.

The Bankruptcy Court, in contrast, found that "an analysis of the Property's characterization [would not] involve the same transactional nucleus of facts presented in the Adversary Proceeding." (ER 441). It explained that in "the Adversary Proceeding, the Trustee attempted to recover alleged transfers that, in the Trustee's view, were used to shield property of the estate from creditors[,]" whereas in the Application, "the Trustee is merely characterizing the Property as property of the estate, to market and sell the Property for the benefit of the estate." (ER 441–442). However, the proper inquiry is not whether the court's analysis would involve the same nucleus of facts, it is "whether the two suits arise out of the same transactional nucleus of facts." *Harris*, 682 F.3d at 1132. The Bankruptcy Court did not consider whether the Trustee's claim that the Property is community property could have been brought in the Adversary Proceeding, or whether the two cases could have been conveniently tried together.

In sum, because "[t]here are no real differences (if there are any differences at all) between the factual predicates for the two [ ] actions" this criterion weighs in favor of an identity of claims. *See Liquidators*, 630 F.3d at 1151.

### B. Whether Rights or Interests Established in the Prior Judgment Would be Destroyed or Impaired by Prosecution of the Second Action

The Court next determines what rights, if any, were established in the Adversary Proceeding. The Adversary Proceeding arose in response to Debtor's disclosure of the Quitclaim Deed in his initial bankruptcy schedules as a prepetition transfer of property while omitting the Property as a real property asset in Schedule B. (ER 44, 53). The Trustee responded to Debtor's disclosures by initiating the Adversary Proceeding to avoid the Quitclaim Deed as a fraudulent transfer of the Property, "as well as recovery of the[] same for the benefit of the Estate" under 11 U.S.C. §§ 548 and 550. (ER 68–78). Section 548 of the Bankruptcy Code allows the trustee to avoid any transfer made "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became . . . indebted." Section 550 authorizes a trustee, after avoiding a fraudulent transfer under section 548, to recover the property transferred or the value of the property for the benefit of the bankrupt estate. 11 U.S.C. § 550(a).

On September 9, 2019, the Bankruptcy Court held in favor of the Muennichows and found that Debtor did not fraudulently transfer the Property to Appellant. (ER 663–64). Therefore, the Trustee could not recover the Property for the benefit of the estate under 11 U.S.C. §§ 548 and 550. If the Bankruptcy Court held in favor of the Trustee, the Property would have become part of the estate under Bankruptcy Code section 541(a)(3), which provides that the bankruptcy estate shall be comprised of property that the trustee recovers under section 550. *See* 11 U.S.C. § 541(a)(3). Thus, the only right established by the Bankruptcy Court's decision in the Adversary Proceeding was that the Property was not fraudulently transferred and thereby not recoverable under section 541(a)(3).

Appellant argues that her rights established in the Adversary Proceeding would be destroyed "if the Trustee is allowed this second opportunity to take her home for the benefit

of the estate." (Mot. at 27). However, as Appellant herself acknowledged, up until the Trustee filed the Application, the question of whether the Property "is outside the bankruptcy estate ha[d] yet to be determined." *See* (ER 192). That is because the Adversary Proceeding did not establish that the Property was not part of Debtor's estate under section 541(a)(2). Nor could it, because the Property became a part of Debtor's estate as soon as he declared bankruptcy pursuant to section 541(a)(2).[7] When a Chapter 7 bankruptcy petition is filed, pursuant to Bankruptcy Code section 541, "an estate automatically is created that comprises essentially all property owned by the debtor." *In re Mwangi*, 432 B.R. 812, 818 (9th Cir. BAP 2010). "Section 541 is self effectuating." *In re Kimmel*, 378 B.R. 630, 638 (9th Cir. BAP 2007), *aff'd*, 302 F. App'x 518 (9th Cir. 2008). Under section 541(a)(2), the bankruptcy estate includes "all interests of the debtor and the debtor's spouse in community property as of the commencement of the case." 11 U.S.C. § 541(a)(2). Therefore, "community property in which [Debtor] had an interest automatically went into the estate by the mere fact of its existence." *In re Kimmel*, 378 B.R. at 638.

Importantly, Appellant does not appeal or otherwise dispute the Bankruptcy Court's determination that the Property is community property under California law. Moreover, the Property has always remained in Debtor's estate by virtue of it being community property because the Property has not been abandoned by the Trustee. *See* 11 U.S.C. § 554(d) ("Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.").

Appellant argues that abandonment is unnecessary because the Trustee did not avoid the transfer as fraudulent under § 550 and therefore the Property falls outside the estate.

---

[7] The fact that Debtor did not list the Property in his schedules is of no significance. "Nothing in § 541 limits property of the estate to property scheduled by a debtor." *In re Blixseth*, 454 B.R. 92, 98 (9th Cir. BAP 2011), *aff'd*, 684 F.3d 865 (9th Cir. 2012). "Property of the estate, therefore, includes property not identified or listed on the bankruptcy schedules." *Id.*; *see also In re Kimmel*, 378 B.R. at 638 ("Whether it was listed on the schedules is irrelevant.").

(Reply at 9). Appellant cites *In re Fehrs*, 391 B.R. 53 (Bankr. D. Idaho 2008), which held that "allegedly fraudulent transfers do not become property of the estate until they are avoided." 391 B.R. at 72 (quoting *In re Bankr. Est. of Midland Euro Exch. Inc.*, 347 B.R. 708, 718 (Bankr. C.D. Cal. 2006)). In *Fehrs*, the issue before the court was whether the avoidance of a fraudulent transfer under § 550 is a condition precedent to the property's inclusion in a debtor's estate under § 541(a)(3) and (4). *Id.* at 71. The court followed *Midland Euro* and the Second Circuit's approach, explaining that "[i]f property that has been fraudulently transferred is included in the § 541(a)(1) definition of property of the estate, then § 541(a)(3) is rendered meaningless with respect to property recovered pursuant to fraudulent transfer actions." *Id.* (citing *In re Colonial Realty Co.*, 980 F.2d 125, 131 (2d Cir. 1992)). The court concluded that "property that has been fraudulently transferred only becomes property of the estate when the transfer has been set aside." *Id.* at 72 (quoting *Midland Euro*, 37 B.R. at 719). While at first glance *Fehrs* and *Midland Euro* may seem analogous to the facts here given the Trustee's attempt to recover the Property as a fraudulent transfer, the properties at issue in both of those cases were only recoverable by way of § 541(a)(3) or (4). Here, in contrast, it is undisputed that the Property is community property; therefore, the Property is included in Debtor's estate regardless of the Trustee's attempt to recover it in the Adversary Proceeding. In addition, unlike § 541(a)(3) where a trustee is required to first set aside a transfer before it becomes part of an estate, a trustee has no obligation to act before § 541(a)(2) automatically brings community property into the estate by virtue of it being community property. *See In re Brace*, 979 F.3d 1228, 1231 (9th Cir. 2020) ("[I]f the property at issue is community property, the property becomes part of the bankruptcy estate in its entirety.").

Appellant alternatively argues that even if the Property were part of Debtor's estate, the Trustee abandoned the Property. Specifically, Appellant argues that the Trustee's removal of the lis pendens placed on the Property on February 5, 2020, (ER 315–16), and the Trustee's non-opposition to a third party's motion to lift the automatic stay filed on January 8, 2020, (ER 187), demonstrate the Trustee's abandonment. (Reply at 10).

However, Appellant did not argue that the Trustee abandoned the Property or otherwise moved to compel the Trustee to abandon the Property in the Bankruptcy Court.[8] It is well-settled that issues raised on appeal are limited to those addressed below. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[A]n appellate court will not consider issues not properly raised before the [trial] court."); *In re Perez*, 30 F.3d 1209, 1214 (9th Cir. 1994) (emphasizing that the reviewing court generally may not consider issues on appeal that "cannot be resolved without further development of the record" by a court below); *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 546 n. 15 (9th Cir. 1991) ("[A]n appellate court will not reverse a district court on the basis of a theory that was not raised below."). Accordingly, the Court declines to address whether the Trustee has abandoned the Property.[9]

In sum, the Adversary Proceeding established only that the Property was not fraudulently transferred. It has never been—nor could it be—established that the Property is not community property and therefore not part of Debtor's estate. Accordingly, any rights or interests established in the Adversary Proceeding would not be affected by the Trustee's filing of the Application.[10] And because the Property is indisputably part of

---

[8] The Court notes that on March 16, 2020, the Bankruptcy Court reminded the parties that, "[t]o the extent that the [P]roperty remains property of the estate, i.e., it is not abandoned by the chapter 7 trustee, [c]ourt approval of any such agreement is required." (ER 224). Indeed, a trustee may abandon property only "[a]fter notice and a hearing." 11 U.S.C. § 554(a). There is no record of the Trustee providing notice or a hearing behind held.

[9] The Court notes, however, that Appellant appears to contradict her argument that the Trustee abandoned the Property in her opening brief, where she asserts that the Trustee merely "gave the impression" that he would abandon the Property. (Mot. at 28).

[10] As to this res judicata factor, the Bankruptcy Court found that its "determination that a fraudulent transfer did not occur will not be 'destroyed or impaired' by the current dispute over whether, as of the petition date, the Property was community property." However, the proper inquiry under the doctrine of res judicata does not focus on whether the court's decision will be impaired; it instead asks whether the rights or interests established in the first action will be impaired by prosecution of the second. Nevertheless, the Court agrees that this factor weighs against applying res judicata, albeit on different grounds.

Debtor's estate under § 541(a)(2) it is therefore subject to liquidation under § 704(a)(1). Accordingly, this factor weighs heavily against applying res judicata.

### C. Whether Substantially the Same Evidence is Presented in Both Actions

The third factor—whether substantially the same evidence is presented in the two actions—weighs in favor of applying res judicata. During the Adversary Proceeding, the key evidence presented was the Quitclaim Deed, the Stipulation, and Appellant's testimony regarding her and Debtor's intent to keep the Property as community property. In the Bankruptcy Court's decision granting the Application on September 9, 2021, the court relied on the same evidence—the Quitclaim Deed, the Application, and Appellant's testimony from the Adversary Proceeding. (ER 515-17).

The Bankruptcy Court found that, although "parties presented potentially overlapping evidence during trial, the parties were not called upon to prove the characterization of the Property as of the petition date, and have not had an opportunity to do so." (ER 442). Even if the evidence was offered under different legal theories, the fact remains that the evidence presented in both actions would substantially be the same. Thus, this factor weighs in favor of applying res judicata.

### D. Whether the Two Suits Involve Infringement of the Same Right

The Adversary Proceeding and the Trustee's Application do not involve infringement of the same right. The former involved Appellant's right to a judicial determination that Debtor did not fraudulently transfer the Property to Appellant by way of the Quitclaim Deed. Conversely, the right at issue in the Application was whether the Trustee may fulfill its statutory duty to administer and "reduce to money" property of the estate, which includes the Property under § 541(a)(2). *See* 11 U.S.C. § 704(a)(1). Thus, the two suits do not involve infringement of the same right and this factor weighs against finding identity of claims.

In sum, weighing the four factors reveals that an identity of claims does not exist. That the two suits arise out of the same transactional nucleus of facts is not dispositive under these circumstances. *See, e.g.*, *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 856

(9th Cir. 2016) (holding that res judicata does not apply even though "the same nucelus of facts gave rise to both complaint"); *Bernardi v. Deutsche Bank Nat. Tr. Co. Americas*, No. C-11-05453-RMW, 2013 WL 1334266, at *6 (N.D. Cal. Mar. 29, 2013) (declining to apply res judicata even though the allegations in both actions "relate to the same series of events" because the second action "involves a determination . . . that was never decided in the [first] action"). Rather, under the unique circumstances of this case, the fact that Appellant has never established a right to keep the Property outside Debtor's estate under § 541(a)(2) is outcome determinative. Despite Appellant's insistence that the Property had always been community property to protect her interests in the Adversary Proceeding, as Appellant and the Bankruptcy Court both recognized, the nature of the Property was never determined prior to the Trustee filing the Application. Because both parties agree that the Bankruptcy Court was correct in finding that the Property is community property, the Property automatically vested in Debtor's estate as soon as he filed for bankruptcy. Moreover, the fact that Appellant has continued to invest in the Property under a purported false assumption that it was outside the estate—despite her testimony to the contrary and that it was never abandoned by the Trustee—does not preclude the Trustee from seeking to liquidate the asset. Indeed, while it may seem unfair, "[i]f there is no equity in an estate asset, there is little motivation for a chapter 7 trustee to incur the expense of administering the asset." *In re Herter*, 456 B.R. at 469; *see also Hyman v. Plotkin (In re Hyman)*, 123 B.R. 342, 348 (9th Cir. BAP 1991) (explaining that, where there is no equity in an asset, there is no reason for a trustee to object to actions affecting the asset; and, when that is the case, a trustee's failure to speak is not misleading and does not estop the trustee from later objecting if the asset's value changes). Accordingly, though for different reasons, the Court affirms the Bankruptcy Court's decision that res judicata does not bar the Trustee from fulfilling his statutory duty to maximize recovery for creditors by maximizing the Debtor's estate's assets.[11]

---

[11] Alternatively, the Bankruptcy Court found that the Application does not qualify as a "claim" or a "cause of action" because it merely disputes the characterization of the

## IV. CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the Bankruptcy Court's order granting the Trustee's Application.

DATED: March 17, 2023



HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE

---

Property. (ER 442). This Court agrees. "Typically, a pleaded cause of action states a legal ground for recovery supported by specific allegations of conduct by the defendant on which the plaintiff relies to establish a right to relief." *Baral v. Schnitt*, 1 Cal. 5th 376, 381 (2016). Here, the Trustee simply sought permission to employ real estate brokers to help sell the Property, which already was part of Debtor's estate by virtue of § 541(a)(2). The doctrine of res judicata cannot apply without a second claim or cause of action. Therefore, the Court affirms the Bankruptcy Court's decision on this basis, as well.